In the Matter of Rita PETERSON.

No. C9–83–447.

Supreme Court of Minnesota.

Jan. 11, 1984.

Thomas Bennett Wilson, III, Gayle Gaumer, Edina, for appellant.

Thomas L. Johnson, Henn. Co. Atty., John R. Owen, Asst. Co. Atty., Minneapolis, for respondent.

AMDAHL, Chief Justice.

Rita Peterson challenges an order of the district court denying her motion to dismiss the revocation of her provisional discharge from commitment. We affirm.

The patient was committed to the Anoka State Hospital in June 1982 suffering from a psychiatric disorder. Later that month, the commitment order was amended to effect the transfer of her custody to the University of Minnesota Hospital where she remained until her first provisional discharge to Hoikka House in October 1982. She was readmitted to the University Hospital later that same month and then provisionally discharged again, on this occasion to her own apartment, on October 18, 1982.

In discharging the patient, the hospital imposed two specific conditions: the patient was required to continue to take prescribed medications and to keep scheduled out-patient appointments. Her physician,

Dr. Elke Eckert, later indicated that the conditions had been explained and discussed with Peterson many times before her release. A third condition of release, identified in an October 1982 letter from a staff physician to the court, was that "there be no obvious signs of deterioration of her mental status."

Shortly after Peterson's second provisional discharge, the University Hospital received telephone information from Winona Hospital during which the caller stated that Ms. Peterson had been found in the middle of the night lying beneath an automobile, incontinent, removing her clothing, complaining that someone had implanted an object in her head and otherwise acting "bizarrely." The caller, never specifically identified, indicated that Winona Hospital requested that Peterson be transferred to the University.

Unsure of the procedure to effect the transfer, Dr. Eckert contacted the probate court and subsequently detailed in a letter the conditions of Peterson's discharge, the physician's understanding that the patient no longer satisfied those conditions and the request that the patient be referred to the University Hospital. The court responded to the letter with the issuance of an order for apprehension and return to the hospital for revocation of the provisional discharge. The patient's attorney was not notified of Dr. Eckert's request for return or the court's order. Nothing in the record indicates that Peterson objected to the transfer.

On November 16, 1982, the county attorney moved to amend the commitment order to facilitate Peterson's return to the Anoka State Hospital. Peterson's counsel received notice of the hearing, appeared on her behalf and cross-examined Dr. Eckert regarding the telephone call from the Winona Hospital, the conditions of the provisional discharge and the grounds upon which revocation and return were sought. At the close of the hearing, counsel orally moved the court to dismiss the provisional discharge revocation proceedings upon the basis that the requirements of Minn.Stat.

§ 253B.15, subd. 2 (1982), had not been satisfied.

█ The trial court denied the motion, finding that revocation was permissible under section 253B.15, subd. 2(ii), because the patient's safety was jeopardized. Peterson renewed her motion, contending that the revocation was based upon inadmissible evidence and denied her due process. The second motion was also denied and this appeal followed. During the pendency of these appellate proceedings, Peterson was discharged from commitment; we declined to dismiss the appeal as moot, concluding that the issues were "capable of repetition yet evading review." *Southern Pacific Terminal Co. v. Interstate Commerce Commission,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911).

1. This appeal prompts us to delineate the procedures to be followed when a provisional discharge is revoked within 60 days of its issuance.

Minn.Stat. § 253B.15, subd. 2–6, detail the procedure for revoking provisional discharges. Specifically, subdivision 2 authorizes the head of a facility to revoke if:

(i) The patient has violated material conditions of the provisional discharge, and the violation creates the need to return the patient to the facility; or,

(ii) There exists a serious likelihood that the safety of the patient or others will be jeopardized, in that either the patient's need for food, clothing, shelter, or medical care are not being met, or will not be met in the near future, or the patient has attempted or threatened to seriously physically harm himself or others.

However, while such decisions are not without procedural safeguards, a somewhat different problem is presented when revocation is attempted within 60 days of the provisional discharge, a matter governed by section 253B.15, subd. 6, which provides:

During the first 60 days of a provisional discharge, the head of the treatment facility, upon finding that either of the conditions set forth in subdivision 2 exists, may revoke the provisional discharge without being subject to the provisions of subdivisions 2 to 5.

█ We now examine the question of whether the statute vests the head of the facility with absolute and final discretion to revoke a conditional discharge within the 60-day period. We conclude that it does not. Because the legislature determined that such a decision must be based upon the occurrence of one of the two specified conditions, the exercise of the discretion must be subject to some form of review.

In cases where revocation is sought after 60 days have elapsed, the necessary procedures are statutorily defined. A notice of intent to revoke, stating the grounds for revocation, must be served on the patient and his attorney, and the patient must have an opportunity for a hearing prior to the intended revocation. Normally, such hearing must be held within 14 days, but it will be held within 5 days if the patient so requests. At the hearing, the burden of proof is on the party seeking revocation. The hearing court is required to make findings of fact, and it will permit revocation only if it finds a factual basis for the revocation under subdivision 2(i) or (ii). Minn.Stat. § 253B.15, subd. 3, 4 (1982).

The legislature has clearly indicated in section 253B.15, subd. 6, by excepting early revocations from the requirements of subdivisions 2 to 5, its recognition that these same procedures are unavailable during the 60-day period. However, in our view, certain minimum procedures should be afforded, similar to those found in *In Re Richardson,* 481 A.2d 473 (D.C.1984).

█ In circumstances similar to those here presented, brief rehospitalization without a prior adversarial hearing is authorized where the head of the facility provides the court, within 48 hours of the rehospitalization, with an affidavit reciting the recent actions of the patient and the reasons for his return. The affidavit must be in sufficient detail to enable the court to make a prompt finding that revocation is necessary. Further, the patient and his counsel

must be provided with a copy of the affidavit within that same 48-hour period.

■ If the patient challenges the basis for the decision, he may file an affidavit with the court specifying the reasons for contesting the revocation. The court must then make the threshold determination of whether there exists a genuine issue as to the propriety of the revocation. If the court finds no genuine issue, the temporary revocation may be affirmed; if a preliminary showing of a valid challenge is made, the court may take steps necessary under the circumstances, including setting the matter for a hearing on the merits. These proceedings shall be completed within 5 days of the rehospitalization. *See* Minn. Stat. § 253B.15, subd. 4 (1982).

While the exigencies of an individual matter may require immediate rehospitalization of a provisionally discharged individual, we conclude that a patient must be afforded a prompt opportunity to challenge the decision to assure that the rehospitalization is appropriate and consistent with statutory guidelines. While the procedures we have defined do not require a pre-return hearing and its attendant delays, they adequately guard against erroneous revocation of the patient's provisional discharge.

■ 2. Peterson also claims that all evidence presented in support of her revocation was inadmissible hearsay. However, because she provided no evidence showing that the information relied upon was either false or misinterpreted, the trial court's decision must be affirmed.

Affirmed.