In the Matter of the WELFARE
OF M.R.S., Child.

Nos. C5–86–1416, CX–86–1458
and C4–86–1567.

Court of Appeals of Minnesota.

Feb. 3, 1987.

Mary Kay Klein, Smith, Carpenter, Benshoof & Klein, P.A., Michael R. Ruffenach, Bemidji, for child.

Thomas J. Keyes, Beltrami Co. Atty., Shari Rae Schluchter, Asst. Co. Atty., Bemidji, for Beltrami County.

Considered and decided by FOLEY, P.J., and FORSBERG and RANDALL, JJ., with oral argument waived.

## OPINION

FOLEY, Judge.

This is a consolidated appeal concerning disposition of a juvenile and removal of that juvenile's appointed counsel. Additionally, a petition for writ of prohibition removing the trial court from the juvenile's case is also before this court. We reverse and remand.

## FACTS

M.R.S. was born on June 29, 1971. Her first contact with the courts, at age 13, occurred on November 19, 1984, when her mother petitioned the family division of Beltrami County court to have M.R.S. adjudicated a runaway and juvenile petty offender. The petition alleged that M.R.S.: 1) took $200 out of her mother's purse without permission; 2) made and recanted an accusation that three boys she invited over to her house raped her; 3) skipped school, hitchhiked from her home in Bemidji to Duluth for the purpose of finding a

ride to a concert in Minneapolis, and turned herself in to the police in Duluth when she failed to find a ride; 4) made $360 of non-consensual long distance telephone calls from her home phone; and 5) had a rebellious attitude towards her parents. M.R.S. admitted the allegations in the petition and was placed in the Northwest Juvenile Training Center. Subsequent to this disposition she was transferred to Shady Pines Group Home.

Approximately eight months later, M.R.S. ran away from Shady Pines Group Home to her parents' home. Her mother did not report her presence to the group home, but M.R.S. was soon taken back into custody. An informal hearing was held on September 13, 1985. M.R.S. was present, unrepresented by counsel. The court ordered her to return to the group home and prohibited her from running away again. As the hearing concluded, M.R.S. broke away and ran from the courtroom. She was apprehended a few hours later by her parents and returned to the authorities. A detention hearing was held immediately, and Mary Kay Klein was appointed as counsel for M.R.S. The court ordered M.R.S. incarcerated in secure detention, the Clay County Juvenile Detention Center, pending disposition of criminal contempt charges for fleeing the court.

Klein orally petitioned this court for an emergency writ of prohibition pursuant to Minn.R.Civ.App.P. 121.01. On September 20, 1985, this court granted the writ of prohibition and ordered the immediate release of M.R.S. from the Clay County Juvenile Training Center and detention at the Northwest Juvenile Training Center. The same day Beltrami County filed a delinquency petition based upon the criminal contempt charge for fleeing the court.

While at the Northwest Juvenile Training Center, M.R.S. attempted to run away four times. The last of these attempts resulted in a charge of criminal damage to property. At a new detention hearing the following day, M.R.S. admitted damaging the property and was ordered detained at the Clay County Juvenile Detention Center.

Criminal contempt charges were dropped. A psychological evaluation of M.R.S. was also ordered at that time and again 19 days later at the request of the mother and child.

On November 13, 1985, a dispositional hearing was held. M.R.S. was adjudicated delinquent and transferred from the Clay County Juvenile Detention Center to Evergreen House, an unsecured runaway shelter in Bemidji, pending placement in a PATH home. During her stay at Evergreen House, M.R.S. ran away several times. She was also charged with misdemeanor theft of a classmate's jewelry, which resulted in her suspension from school. Because of this conduct M.R.S. was rejected by the PATH program in her preplacement interview. Citing these events, the court modified its original dispositional order on December 3, 1985 and placed M.R.S. at Fairview Deaconess Hospital in Minneapolis.

M.R.S. made her first appearance for the misdemeanor theft charge on March 3, 1986, represented by her appointed public defender, Michael Ruffenach. Klein, the original court-appointed counsel, continued to represent M.R.S. as well.

At an additional dispositional hearing on March 12, 1986, the delinquency of M.R.S. was affirmed and continued placement in Fairview Deaconess Hospital was ordered. The court considered and declined placement in the less restrictive Archdeacon Gilfillian Center based on its determination that a secured facility was needed. Counsel for M.R.S. requested formal review of the disposition pursuant to Minnesota Rule of Juvenile Court Procedure 30.07 based on a claim of inappropriate placement and changed circumstances. The request was denied.

On July 18, 1986, a formal review hearing took place to evaluate the disposition at Fairview Deaconess Hospital. Gordon Stamp, a representative of Fairview Deaconess Hospital, indicated that M.R.S. had been evaluated and that the institution recommended placement in their long-term secure facility under the restrictive "Master-

son Plan." The trial judge rejected M.R.S.'s request to be placed in a less restrictive program and summarily ordered continued placement in Fairview Deaconess Hospital with commencement of the "Masterson Plan." The trial court found that the court's original findings and disposition of March 20, 1986 should not be modified. Those findings were as follows:

1. The following are the facts supporting the disposition: The child admitted to the offense of misdemeanor theft. She is currently in placement at the Fairview Deaconess Hospital in Minneapolis having been placed there by the Court's order dated December 3, 1985 after having been suspended from school, becoming involved in this offense, and PATH's refusal for placement in a foster home.

2. The best interests of the child are served by the disposition because: She continues to need in-patient treatment to keep her behavior under control while trying to treat her problems.

3. a) The alternative dispositions recommended to the Court were: Placement at the Gilfillian Center.

b) The reasons why such alternatives were not ordered are as follows: A secured facility is needed to provide the structure and firm limits to keep her behavior under control.

The court's order, effective for one year, provided for continued placement in Fairview Deaconess Hospital and required monthly reports regarding the child's progress. This refusal to modify the disposition was appealed to this court on August 20, 1986.

Subsequently, Klein discovered that an undisclosed ex parte conference between the trial court and Gordon Stamp, the Fairview Deaconess Hospital representative, had occurred prior to the formal review hearing in July 1986. The trial court had contacted Stamp to obtain information about the "Masterson Plan" and why its application was needed in the case of M.R.S. Consequently, Klein moved the court to have the judge disqualify himself from the case and moved for a new formal

review hearing. All relief was denied on August 13, 1986. Klein then filed a request for a writ of prohibition with this court seeking removal of the trial judge from the case, and an order granting a new review hearing.

On September 3, 1986, following Klein's request for a writ of prohibition and Ruffenach's appeal of the court's denial of dispositionary modification, the trial court ordered Ruffenach to represent M.R.S. on appeal and removed Klein as attorney for the child. This order removing Klein as counsel was also appealed to this court on September 16, 1986.

On October 24, 1986, Klein informed this court that on October 16, 1986, after appeal had been perfected on all three issues, the trial court had "terminated jurisdiction" over M.R.S. M.R.S. was discharged from Fairview Deaconess Hospital that same day and was returned to her parent's home. Klein further requested that this court order the trial court to pay all fees and expenses to date in the amount of $2,240.99.

## ISSUES

1. Did the trial court fail to make the required findings in its disposition of appellant?

2. Did the trial court clearly abuse its discretion by removing appellant's appointed counsel?

3. Should this court deny appellant's motion for a writ of prohibition ordering the trial judge removed from appellant's case and ordering a new formal review hearing?

## ANALYSIS

1. *Dispositional Findings Mandated by Legislature*

Appellant claims that the trial court abused its discretion by refusing to modify its order placing M.R.S. in Fairview Deaconess Hospital. She argues that placement in Fairview Deaconess is not necessary for restoration of lawful conduct. *See*

*Welfare of L.K.W.,* 372 N.W.2d 392, 398 (Minn.Ct.App.1985). Appellant also argues that her best interests mandate that she be returned to her parents' home because Fairview Deaconess Hospital is not suitable for meeting her needs. *See id.* at 399–400. Appellant also contends there are no findings to support the conclusion that Fairview Deaconess Hospital is suitable for her needs and that, in fact, the program is not at all appropriate. We agree.

Initially we note that despite appellant's recent release from Fairview Deaconess Hospital, we accept review of her disposition because such an issue is capable of repetition, evading review. *See In re Peterson,* 360 N.W.2d 333, 335 (Minn.1984).

In a delinquency disposition the trial court must take the least drastic step necessary to restore law-abiding conduct in the juvenile. *Matter of L.K.W.,* 372 N.W.2d 392, 398 (Minn.Ct.App.1985). To determine what is necessary the trial court must balance the "severity of the child's delinquency, and the severity of the proposed remedy." *Id.* This disposition must serve the best interests of the child. *Id.* at 399. That is, there must be evidence that the aims of the law cannot be satisfied without removal of the child from home and that the placement is suitable for the needs of the child. *Id.* at 399–400.

Here, the trial court's disposition was not necessary to restore M.R.S. to lawful conduct. The severity of the delinquency of the child does not justify the severity of the remedy the court ordered. M.R.S. has committed relatively minor offenses, yet was placed in a severely restrictive program which deprives its patients of all communal contact as part of its treatment program. She was placed there despite the fact that the less restrictive Archdeacon Gilfillian Center was available as an alternative. Additionally, there is nothing in the record indicating that such disposition was in the child's best interests.

Most importantly, we find that the trial court has failed to make the necessary findings for a juvenile disposition. Dispositional findings are mandated by the legislature. Minn.Stat. § 260.185, subd. 1 (1986); Minn.R.Juv.Ct.P. 30.05. These findings must address the dispositional choices considered by the court and reasons why one is preferred. *Matter of L.K.W.,* 372 N.W.2d 392, 400 (Minn.Ct.App.1985). "They must address the interests and the needs of the child." *Id.* Such findings are necessary for meaningful appellate review. *Id.* at 400–01. The trial court has not complied with this mandate.

The trial court used a form in which a few sentences were added under the categories "facts supporting the disposition," "best interests of the child served by the disposition," "alternative dispositions recommended," and "reasons why such alternatives were not ordered" in support of the ordered disposition. The words filled in on this form give little guidance. The findings indicate that M.R.S. was originally placed at Fairview Deaconess Hospital for committing misdemeanor theft, being suspended from school, and being rejected by PATH. They further indicate that the best interests of the child are served by placement in Fairview Deaconess Hospital because M.R.S. "continues to need in-patient treatment to keep her behavior under control while trying to treat her problems." The less restrictive Gilfillian Center was considered, but rejected as an alternative because "[a] secure treatment facility is needed to provide the structure and firm limits to keep her behavior under control."

These findings fall far short of the statutory requirement. No finding was made as to M.R.S.'s specific problems and the suitability of Fairview Deaconess Hospital as a remedy for them. In fact, no finding was ever made as to what was in her best interests. It is apparent to us that M.R.S. was placed in a very restrictive secure facility simply to keep her from running away again. Whether this placement would aid her in solution of her particular problems was never addressed. There is virtually no relationship in the court's findings between the child's need for treatment and the disposition rendered. Rather it

appears that the child was merely being punished and that the punishment was disproportional in relation to her crimes, which were very minor.

### 2. *Arbitrary Dismissal of Juvenile's Appointed Counsel*

Appellant claims it was improper for the trial court to have removed Klein as appointed counsel for M.R.S. and that such removal constitutes an abuse of discretion. Appellant claims the order violates her right to counsel and destroys the necessary attorney-client relationship. We agree.

It is generally recognized that where there is a Sixth Amendment right to counsel there is a right to a choice of counsel. *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). This applies to juveniles as well. *See* Minn.R.Juv. Ct.P. 40.01. It is also generally recognized, however, that in the case of appointed counsel the subject does not have an unqualified right to counsel of their own choosing. *See, e.g., Harling v. United States,* 387 A.2d 1101 (D.C.Ct.App.1978). Yet, once an attorney is serving under a valid appointment by the court and an attorney-client relationship has been established, the court may not arbitrarily remove the attorney over the objection of both the defendant and counsel. *Id.* at 1105:

> [W]e must consider whether a court-appointed counsel may be dismissed, over the defendant's objection, in circumstances in which retained counsel could not be removed. A superficial response is that the defendant does not pay his fee, and hence has no grounds to complain as long as the attorney handling his case is competent. But the attorney-client relationship is not that elementary: it involves not just the [casual] assistance of a member of the bar, but an intimate process of consultation and planning which culminates in a state of trust and confidence between the client and his attorney. This is particularly essential, of course, when the attorney is defending the client's life or liberty. Further-

more, the relationship is independent of the source of compensation, for an attorney's responsibility is to the person he has undertaken to represent rather than the individual or agency which pays for the service. * * * It follows that once counsel is appointed * * * the parties enter into an attorney-client relationship which is no less inviolable than if counsel had been retained. To hold otherwise would be to subject that relationship to an unwarranted and invidious discrimination arising merely from the poverty of the accused.

*Smith v. Superior Court of Los Angeles County,* 68 Cal.2d 547, 561, 68 Cal.Rptr. 1, 10, 440 P.2d 65, 74 (1968) (citations omitted) (footnote omitted) (en banc). *Accord McKinnon v. State,* 526 P.2d 18, 22 (Alaska 1974); *Harling v. United States,* 387 A.2d 1101, 1105 (D.C.1978); *People v. Davis,* 114 Ill.App.3d 537, 542, 70 Ill.Dec. 363, 367, 449 N.E.2d 237, 241 (1983); *English v. State,* 8 Md.App. 330, 335, 259 A.2d 822, 826 (1969).

Accordingly, we find that the trial court's summary dismissal of Klein as counsel for M.R.S. during appeal was a clear abuse of discretion. An inviolate attorney-client relationship had been created and should not be arbitrarily disturbed. The fact that the county was paying for counsel does not in and of itself provide the trial court with sufficient justification for arbitrary removal of Klein over the objections of M.R.S. and Klein.

This kind of arbitrary action can have no other but a chilling effect on conscientious advocacy. To discharge an attorney without just cause simply because he or she challenges the court by seeking a writ of prohibition or appeal is manifestly improper. This action requires reversal.

### 3. *Writ of Prohibition*

Appellant has petitioned for a writ of prohibition restraining the trial court from enforcing its August 13, 1986 order. The disputed order denied appellant's Rule 63 motion that the trial judge remove himself from M.R.S.'s case and order a new

formal review hearing before another judge. Appellant based this motion and petition on the fact that the trial judge had an undisclosed *ex parte* communication with Gordon Stamp, a representative of the treatment program M.R.S. was ultimately placed in, before the formal review hearing was held. The issue upon which petition for the writ is based is now moot. We therefore deny the petition but reverse on the removal of the juvenile's appointed counsel.

## DECISION

The trial court failed to make the required findings for a juvenile disposition and improperly removed the juvenile's appointed counsel. The trial court's order dismissing counsel is reversed. The case is remanded for reassignment by the chief judge of the district to determine Mary Kay Klein's attorney's fees. This determination should be made by a judge other than the original trial judge.

Reversed and remanded.

LESLIE, J., took no part in the consideration or decision of this case.