**In re the Matter of the WELFARE OF L.B., Jr.**

No. CO–86–1906.

Court of Appeals of Minnesota.

April 21, 1987.

Larry E. Reed, Hassan & Reed, Ltd., Minneapolis, for L.B. Jr.

Karen Aspaugh, Asst. Dakota Co. Atty., Hastings, Dakota County.

Considered and decided by LESLIE, P.J., and SEDGWICK and HUSPENI, JJ., with oral argument waived.

## OPINION

LESLIE, Judge.

L.B. appeals from an adjudication of delinquency and his subsequent disposition. L.B. cites several errors of the trial court which he claims mandate reversal. Respondent Dakota County claims the appeal should be dismissed for mootness. We affirm.

### FACTS

On February 3, 1986 the Burnsville police department filed a delinquency petition against L.B., alleging third degree assault. The petition claimed L.B. slapped a 17 year old girl three times, then struck her in the face after she called L.B. a "nigger." The girl suffered a broken nose from the punch. A hearing was set for February 26. The trial court continued the matter to March 5. The court then set a trial date of April 24. Because of a scheduling conflict of L.B.'s attorney, the trial date was continued to May 13.

L.B. became dissatisfied with his court-appointed attorney, and requested another appointment. The court assigned a second attorney and continued the matter to May 27, 1986. L.B.'s new attorney requested another continuance and the trial was set for June 16.

On May 30, 1986 the Rosemount police department filed a second delinquency petition against L.B. The petition alleged four counts of fifth degree assault and two counts of disorderly conduct for acts allegedly committed on January 8 and March 21, 1986. The court set a hearing on this

matter for June 11. On that date the court continued the trial until June 16, the date set for the trial of the matters in the first petition.

L.B.'s attorney negotiated a plea agreement with the county prosecutor and discussed the agreement with L.B. On June 16, 1986 the attorneys appeared to submit the plea agreement to the court. L.B. attended, but denied having agreed to the plea. Because of the disagreement with L.B., the attorney requested the court to allow him to withdraw from representation. At this point the court had assigned three different attorneys to the case and had continued the matter at least six times. The court told L.B. to find his own attorney at the County's expense and continued the trial to August 18, 1986. The court informed all parties that no more continuances would be granted.

On July 31, 1986 the court on its own motion continued the trial to September 8, 1986. Neither party requested another continuance until September 3. On that day the court received a letter from an attorney who had been contacted by L.B. In the letter the attorney requested a continuance due to a conflict.

The trial court did not see the letter until the morning of the trial, September 8, 1986. Although L.B.'s attorney was not present, L.B. and his father attended. The county attorney was prepared with her witnesses to try the January 10 offense. The trial court denied the motion to continue "[b]ecause of the number of continuances that [had already] been granted in this case and because of the fact the alleged victims were entitled to have this matter tried as well as" L.B. The court also noted that "at the last hearing [it] informed [L.B.] that there would be no further continuances granted". The court allowed L.B.'s father to examine witnesses and appointed an attorney to be present in the courtroom in an advisory capacity on behalf of L.B. This was the first time the attorney had seen the case and thus he was not provided with time to prepare for the trial.

Additionally, because L.B. believed the court would grant the motion to continue,

he did not have any of his witnesses present at the September 8 trial. Because of this, the trial judge allowed L.B. to bring his witnesses for the January 10 offense on the next day September 9 and on the following Monday, September 15, 1986. On September 15, 1986 the trial court found L.B. not guilty of the January 10 assault offense.

On September 9, 1986 the court held the trial for the January 8 and March 21 assault and disorderly conduct offenses. The county attorney appeared with seven witnesses to prove her case. L.B. and his father again appeared without any attorney except the attorney appointed the previous day. L.B. presented three witnesses in his defense on September 15, 1986. On that day he again appeared only with his father and the latest court-appointed attorney.

The trial court found L.B. committed four counts of assault in the fifth degree and one count of disorderly conduct. The court also found L.B. in violation of his probation for the disorderly conduct offense of May 20, 1985, which was tried on November 6, 1985. The court then considered alternatives for disposition of L.B. and ordered outside placement at the long-term treatment program at Totem Town.

On September 22, 1986 the trial court appointed L.B.'s chosen attorney as counsel for L.B. This attorney moved for a new trial claiming the court abused its discretion in denying the motion to continue. The attorney also alleged L.B. was denied his right to counsel and that the evidence was insufficient to prove the acts were committed. L.B.'s motion was denied and this appeal followed.

The juvenile court released L.B. from further supervision and terminated the jurisdiction of the court on January 15, 1987 because L.B. had "made a satisfactory adjustment" and had "completed the period of supervision assigned to him". Because L.B. reached age 18 in November 1986 and the juvenile court terminated jurisdiction and sealed L.B.'s records, the County moved to dismiss this appeal on mootness grounds. By order dated February 20,

1987 this court referred the motion to dismiss to this panel.

## ISSUES

1. Is this appeal moot because the juvenile court has released appellant from further supervision and terminated the jurisdiction of the court?

2. Did the trial court abuse its discretion in denying appellant's motion for a continuance?

3. Did appellant receive effective assistance of counsel?

4. Was the evidence sufficient to support the trial court's decision?

5. Is the trial court's decision supported by sufficient findings?

## ANALYSIS

1. Initially we must decide whether this appeal is moot due to the fact that L.B. has been released from supervision and the juvenile court's jurisdiction has terminated. The Supreme Court long ago rejected the mootness argument in cases where the sentence has been served. *Sibron v. State of New York*, 392 U.S. 40, 55, 88 S.Ct. 1889, 1898, 20 L.Ed.2d 917 (1968). Here, the County claims that because L.B.'s juvenile record will be sealed now that he is an adult, the record of these offenses cannot hurt him. However, "the obvious fact of life [is] that most criminal convictions do in fact entail adverse collateral legal consequences. The mere 'possibility' that this will be the case is enough to preserve a criminal case from ending 'ignominiously in the limbo of mootness.'" *Id.* (citations and footnote omitted). It is undeniably the fact that probation officers and other court services personnel would see L.B.'s juvenile records in the future should L.B. be convicted of a crime. There are doubtless other collateral consequences.

■ Additionally, this type of case is capable of repetition, evading review, and is therefore reviewable by this court. *Welfare of M.R.S.*, 400 N.W.2d 147, 151 (Minn. Ct.App.1987). For these reasons the motion to dismiss for mootness is denied and we now review the merits of this appeal.

■ 2. L.B. cites several errors which he claims denied him a fair trial. The primary issue to consider is whether the trial court abused its discretion in denying L.B.'s motion for continuance of the trial. It is within the trial court's discretion to rule on a defendant's request for continuance. *Welfare of T.D.F.*, 258 N.W.2d 774, 775 (1977). We cannot reverse the trial court absent a showing of prejudice by the defendant, but reversal is required where denial of a continuance deprives defendant's counsel of adequate trial preparation. *Id.*

Here, the trial took place over six months after the alleged offenses and nearly three months after the trial court granted L.B. the chance to obtain the attorney of his own choosing, at the County's cost. The letter from L.B.'s chosen attorney requesting a continuance was sent to the court a mere three business days prior to trial. The letter arrived at the court on Wednesday September 3, 1986, asking for a continuance of the trial scheduled for the following Monday. The letter stated:

I have been contacted by the child and parent in the above-entitled matter. They have requested that I work on their behalf in the matter of the upcoming trials involving the child. Due to my heavy trial calendar at this point, I would not be in a position to proceed to trial on the date as presently scheduled. I am aware that the court has on several occasions in the past allowed a continuance and am concerned as to whether or not one would be granted again in this case.

I have indicated my willingness to proceed in this matter, however I have indicated also that *I would not be in a position to proceed if the matter could not be continued.*

At this point *I am not attorney of record in this case* and would not be until such time as I have a clear understanding as to whether or not the trial would be going forward. Presently, I am in trial before [another judge] in the Federal Court and would *anticipate being in trial there for the remainder of*

*the week. Obviously this would not give me sufficient time to prepare and investigate the matters involving the child in this case.*

Please advise as to whether or not a continuance would be likely or whether or not the trial would be held as scheduled. I thank you for your consideration.

(Emphasis added).

Although the record does not disclose when L.B. contacted the attorney, the language in the letter indicates the attorney was contacted at a late date. The attorney did not claim he had a conflict on the same day as L.B.'s trial. Instead, he indicated that due to a conflict in the week prior to trial, he did not have sufficient time to "prepare and investigate" the case.

Had L.B. contacted the attorney within the three months allotted prior to trial, the attorney would have had ample preparation time. The attorney acknowledged that he was not yet attorney of record in the case and "would not be in a position to proceed if the matter could not be continued." Thus the attorney had not yet committed himself to representing L.B. Three months before trial the court warned L.B. that no more continuances would be granted. Even though L.B. had nearly three months to obtain an attorney and prepare for trial, L.B. failed to retain an attorney in a timely manner.

L.B. has shown little or no prejudice from the denial of the continuance. The trial court allowed L.B.'s father to examine witnesses and make arguments and appointed another attorney to assist L.B. in an advisory capacity. Thus L.B. did have representation at his trial. Furthermore, the attorney appointed on the day of trial did have some time to prepare for the September 9 and September 15 proceedings. On these days, the attorney was able to effectively examine witnesses and present argument to the court. L.B. also had this time to obtain another attorney to assist him if he so chose. The only day L.B. can claim that his attorney had absolutely no preparation time is the September 8 trial. No prejudice can be claimed however as the trial court found L.B. did not commit the offense tried on that day.

Additionally, the State presented several witnesses in its case and the record contains overwhelming evidence against L.B. There is no reasonable probability that the result of the proceeding would have been different had L.B. been granted a continuance. Because L.B. had been warned that no more continuances would be granted, he had nearly three months to find an attorney, he requested a continuance on three days notice, and can show little prejudice from the denial of the continuance, we hold the trial court did not abuse its discretion in denying L.B.'s request for continuance.

3. L.B. also claims his court-appointed counsel was ineffective due to lack of preparation. In order to prevail on a claim of ineffective assistance of counsel L.B. must show that trial counsel was not reasonably effective and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). The State presented several witnesses in its case and the record contains overwhelming evidence against L.B. There is no reasonable probability that the result of the proceeding would have been different had L.B. been represented by a different attorney.

4. L.B. claims the evidence was insufficient to support the adjudications. In determining the sufficiency of the evidence, this court must view the evidence in a light most favorable to the decision and decide whether the court could reasonably have come to the decision it made. *State v. Swain,* 269 N.W.2d 707, 712 (Minn.1978). We cannot retry the facts and must assume the trial court believed the prosecution's witnesses and disbelieved any contradictory evidence. *State v. Merrill,* 274 N.W.2d 99, 111 (Minn.1978). Here the County introduced several witnesses in support of its case. The trial court could

reasonably have made the decision it did and therefore we must affirm on this issue.

5. Finally, L.B. contends the trial court's findings are inadequate. In addition to its written order adjudging L.B. delinquent for the offenses, the court made findings on the record. Findings regarding guilt are sufficient if in writing or on the record. Minn.R.Juv.Ct.P. 27.06 and 59.06. However, the juvenile court must make *written* findings addressing the dispositional choices considered and the reasons for choosing a particular disposition. Minn. Stat. § 260.185, subd. 1 (1986); Minn.R.Juv. Ct.P. 30.05. These findings are required to guarantee the court considered vital standards, to enable the parties to understand the decision of the court and to facilitate meaningful review. *Welfare of L.K.W.,* 372 N.W.2d 392, 400–01 (Minn.Ct.App. 1985). Omission of these statutorily mandated written findings constitutes reversible error. *Id.* at 401.

The disposition order here contains no findings addressing the dispositional choices considered or the reasons for choosing the Totem Town disposition. Although the record indicates the court considered other options and had good reason for its choice, written findings are required. However, it would be an exercise in futility to remand this matter for additional written findings. L.B. has already completed his term at Totem Town and the juvenile court has terminated its own jurisdiction of L.B. due to his age. There is no benefit to be gained by remanding this case for additional findings. L.B. would not be required to serve another dispositional term and any new dispositional findings would not change L.B.'s guilt or his juvenile record. Although written findings are normally required in disposition orders, the facts of this case make a remand for additional findings pointless. L.B.'s convictions, supported by overwhelming evidence of guilt, are affirmed.

### DECISION

The trial court did not abuse its discretion in denying L.B.'s request for a continuance. L.B. had months to find adequate representation; requesting a seventh continuance on three days notice is unreasonable and the evidence against L.B. is overwhelming. The failure to make the necessary findings normally requires a remand, but under the facts of this case a remand would be pointless.

Affirmed.