**In the Matter of the WELFARE OF M.A.C., child.**

**No. CX–89–2057.**

Court of Appeals of Minnesota.

May 15, 1990.

---

Camille V. Doran, Duluth, for appellant child.

Alan L. Mitchell, St. Louis County Atty., Edward Myers, Asst. County Atty., Duluth, for respondent.

Considered and decided by LANSING, P.J., and PARKER and RANDALL, JJ.

## OPINION

RANDALL, Judge.

This is an appeal from a disposition in a juvenile delinquency proceeding. Appellant M.A.C. contends the trial court violated Minn.Stat. § 260.185, subd. 4 by modifying its original disposition without giving appellant prior notice or holding a hearing. Appellant also claims the trial court abused its discretion by changing its original order based on factors unrelated to his rehabilitative needs and by failing to make sufficient findings to support the new disposition. We agree and reverse.

## FACTS

On October 6, 1989, a teacher at Denfeld High School in Duluth, Minnesota, informed Lisa Mitchell, Denfeld's assistant principal, that appellant smelled like he had been smoking marijuana. Mitchell confronted appellant and he admitted smoking a "joint" at lunch. Appellant consented to a search of his person and locker. Mitchell discovered seven lysergic acid diethylamide (LSD) tablets and two marijuana "joints" in appellant's locker. Mitchell contacted the authorities, and appellant was taken into custody and detained at the Arrowhead Juvenile Center (AJC).

Pursuant to an agreement between appellant and the county attorney, appellant entered admissions to the charges of fifth degree possession of LSD and fifth degree sale of marijuana. The trial court adjudicated appellant delinquent. The court noted that appellant had not appeared in juvenile court prior to this offense and placed appellant on supervised probation for 120 days. The court also ordered appellant to participate in a chemical dependency evaluation, perform nine days nonpaid community service work on the AJC work crew, and submit to random drug testing.

Less than two weeks later, the trial court changed this disposition. The court found its original disposition inappropriate be-

cause it felt it had "underestimated" the severity of the LSD offense. Additionally, the court found it necessary to pattern a "consequence and an intervention in [appellant's] life that would be sufficient * * * to have a real impact * * *." Finally, the court stated that it wanted to

> send a signal to the entire school population that this behavior of possessing and selling illicit drugs * * * on school grounds will not be tolerated and will result in substantial intervention.

Therefore, the court concluded its first disposition was a "mistake" and ordered a new disposition which required 21 days of out-of-home placement of appellant in the Chisholm House program.

The court scheduled a review hearing for October 30, 1989, to permit objections to the new disposition. At the hearing, the trial court heard comments from probation officer Jim Baschdorf, assistant county attorney Myers, and assistant principal Lisa Mitchell. These individuals supported the new disposition based on the "message it would send to the community concerning tolerance for the sale of drugs on school grounds."

Also commenting at the hearing were guardian ad litem Jeff Wallace, Camille Doran, appellant's attorney, and Kathy Peterson of SWAT.[1] Peterson stated that appellant did a good job while involved with SWAT and demonstrated an extremely positive attitude change. Wallace said he thought the original disposition was appropriate and opposed placement in Chisholm House. Wallace found it especially disturbing that Chisholm House provided for only one hour of tutoring a day and two hours of study at night. He doubted that the program would serve appellant's best interests. Furthermore, Wallace felt that community reaction to the original disposition should not be taken into account in determining what was best for appellant's rehabilitation. Doran echoed Wallace's concern regarding the court's desire to send a message to the community by im-

posing a harsher consequence upon appellant. Doran also objected to the court's modification of the original disposition without affording appellant prior notice or an opportunity to be heard.

After hearing these comments, the trial court determined that the new disposition was proper. The court stated:

> The original disposition here was simply a mistake from my point of view. It was inadequate and I still feel that way. It does not fit the crime. It does not fit the need of the individual here. I think [M.A.C.] has to get the realization that this is serious stuff. I don't think my original disposition will do that. I think Chisholm House might have that effect.

Appellant was placed in Chisholm House on October 31, 1989, and was released on November 13, 1989.

### ISSUES

1. Did the trial court violate Minn.Stat. § 260.185, subd. 4 by changing its original disposition without giving appellant prior notice or a hearing?

2. Did the trial court abuse its discretion by modifying its original disposition to provide for out-of-home placement based on factors unrelated to appellant's rehabilitative needs?

3. Did the trial court make sufficient findings to support the new disposition?

### ANALYSIS

Appellant has completed the Chisholm House program and returned to his home. Nevertheless, appellate review of the disposition is appropriate because the issues raised are capable of repetition while evading review. *See, e.g., In re Peterson,* 360 N.W.2d 333, 335 (Minn.1985); *In re Welfare of M.R.S.,* 400 N.W.2d 147, 151 (Minn.App.1987).

### I.

*Prior Notice/Hearing*

Appellant contends by changing the original disposition without giving the par-

---

1. SWAT stands for special workers assisting treatment. It is a division of the St. Louis County Probation Department.

ties prior notice and a hearing, the trial court violated Minn.Stat. § 260.185, subd. 4 (1988) which provides in relevant part:

> [B]efore an order has expired and upon the court's own motion * * *, the court has continuing jurisdiction to renew the order or, *after notice to the parties and a hearing,* make some other disposition of the case * * *.

(emphasis added).

The statute gives trial courts continuing jurisdiction over orders in juvenile delinquency proceedings and allows trial courts to renew or change dispositions. However, the statute specifically states that before a different disposition can be ordered, the parties must be given notice and a hearing. The trial court violated the express terms of the statute in this case by ordering a different disposition without giving appellant prior notification and by failing to hold a hearing before issuing the new disposition.

■ Respondent contends the trial court's action was authorized by Minn.R. Juv.Cts. 30.06, subd. 2, which provides:

> **Modification of Disposition.** Upon review the court may modify the disposition when:
>
> (a) there appears to be a change of circumstances sufficient to indicate that a change of disposition is necessary, or
>
> (b) it appears that a disposition is inappropriate.
>
> The court shall inform the child, the child's counsel, the county attorney and the child's parent(s) and guardian and their counsel in writing of the modification of disposition within ten (10) days of the modification and of the right to a formal review hearing pursuant to Rule 30.07.

We find respondent's reliance on the rule as authorization for the new disposition misplaced.[2] Rule 30.06, subd. 2 was not

used here to "review" a previous disposition, but rather was improperly used to argue that a sentencing court can increase the severity of a previously imposed sentence. *See, e.g., State v. Montjoy,* 354 N.W.2d 567, 568 (Minn.App.1984) (trial court may not subsequently increase a sentence authorized by law).

If we assume for the sake of argument that the rule did apply, then we must examine whether there is a conflict between the rule and the statute. "[R]ules of court may not abridge or modify substantive rights provided by statute * * *." *In re Welfare of D.K.,* 363 N.W.2d 877, 879 (Minn.App.1985), *pet. for rev. denied* (Minn. May 20, 1985), *cert. denied sub. nom., Kabanuk v. Minnesota,* 474 U.S. 846, 106 S.Ct. 137, 88 L.Ed.2d 112 (1985). At issue in *D.K.* was whether, following a determination of delinquency by a referee, a juvenile was entitled to a trial de novo before a juvenile court judge. A statute granted juveniles the right to a "hearing" before the court, but did not define what "hearing" meant. The state argued that the scope of the "hearing" granted by the statute was discretionary with the juvenile court judge. In support of its position, the state pointed to a juvenile court procedural rule. However, this court concluded that the intent of the legislature not the rule of juvenile court controlled the scope of the hearing required by the statute. *Id.*

Here, we must determine what purpose the legislature sought to further by requiring courts to give notice to the parties and hold hearings before ordering different dispositions in delinquency proceedings. The Interim Commission Comment indicates that this provision was "intended to afford some protection for the child * * *." Minn.Stat.Ann. § 260.185, Interim Commission Comment, 1959 (West 1982). This is consistent with constitutional due process requirements in delinquency dispositions

---

**2.** The sentence, "Upon review the court may modify the disposition when," covers the situation when there has been an original disposition ordered, and after a length of time suitable to ascertain the juvenile's progress, some indication appears that a change may be necessary. Then clauses (a) and (b) come into play. Here,

there was no "review" after some passage of time but rather a straightforward change of mind by the sentencing court which decided that the original sentence which was imposed and executed should now be withdrawn and a more severe sentence installed.

where, as here, a juvenile's liberty is at stake. *See McKeiver v. Pennsylvania,* 403 U.S. 528, 543, 91 S.Ct. 1976, 1985, 29 L.Ed.2d 647 (1971); *In re Gault,* 387 U.S. 1, 33–35, 87 S.Ct. 1428, 1446–1447, 18 L.Ed.2d 527 (1967) (prior notice and opportunity to be heard are essential to due process). Therefore, we conclude that the trial court was not authorized by Minn.R. Juv.Cts. 30.06, subd. 2 to change its original disposition to provide for out-of-home placement of appellant without giving him prior notification or holding a hearing as required by Minn.Stat. § 260.185, subd. 4.[3]

## II.

*Modification*

Appellant next contends the trial court abused its discretion by modifying the original disposition when no change of circumstances warranting modification had occurred and by focusing on factors irrelevant to appellant's rehabilitative needs. Respondent argues the modification was justified because the original disposition was "inappropriate."

■ Trial courts have broad discretion to order dispositions authorized by statute in delinquency cases. *In re Welfare of D.S.F.,* 416 N.W.2d 772, 774 (Minn.App. 1987), *pet. for rev. denied* (Minn. Feb. 17, 1988). Absent a clear abuse of discretion, a trial court's disposition will not be disturbed. *See id.* at 775. The goal of delinquency dispositions is to rehabilitate the offender. *See* Minn.Stat. § 260.185, subd. 1. A trial court's disposition "must be *necessary* to achieve that goal." *D.S.F.,* 416 N.W.2d at 774 (emphasis added). The severity of "both the act and the proposed disposition" must be considered by the court. *Id.*

■ We agree with appellant. Our review of the record reveals no evidence of any change of circumstances sufficient to warrant a more severe disposition than was originally ordered. In fact, the trial court did not attempt to point to any change of circumstances. The court settled on a conclusion that unless it treated appellant more harshly others might feel that drug use was okay. The evidence at the modification hearing indicated that appellant had exhibited a positive attitude change while on probation and had complied with the terms of the original disposition. We find the trial court's focus on the message the disposition would send to the school community regarding the severity with which juvenile drug offenders would be treated in future cases disturbing. This is an improper consideration as no juvenile is a "guinea pig." The effect harsh treatment of appellant might have on a school community is speculative and unrelated to appellant's rehabilitative needs. Had this second disposition been the first, it is possible that the record on appellate review might have justified it, but we will never know.

What is troublesome here is how the trial court arrived at its conclusion that its original disposition was inappropriate. After an assumedly careful review of all facts and evidence, the trial court ordered a specific disposition for appellant. Then, without any claim by appellant's probation officer that anything was amiss, the court, within days, simply said it had made a mistake on the first go-round and wanted to increase appellant's sentence to send a signal to appellant's schoolmates. That is not permissible. *Montjoy,* 354 N.W.2d at 568.

## III.

*Dispositional Findings*

Appellant claims the trial court did not make sufficient findings to support the new disposition. Trial courts are statutorily required to make *written findings* in

---

3. The transcript of the October 30th "review hearing" provides an excellent example of the futility of holding a hearing to entertain objections to a disposition *after the disposition has been ordered.* The trial court summarily rejected all objections to the out-of-home placement even though the evidence showed the original disposition was having a positive effect on appellant and despite testimony which called into question the appropriateness of the Chisholm House program for appellant's needs. The trial court's adherence to its second disposition in the face of this evidence indicates that the court had made up its mind to use appellant's case to "send a message" regardless of appellant's best interests.

support of a disposition which demonstrate: why the disposition ordered serves the child's best interests; what alternative dispositions were considered; and why such alternatives were not appropriate. *See* Minn.Stat. § 260.185, subd. 1.

■ Here, the trial court failed to make sufficient written findings to support the second disposition. *See M.R.S.*, 400 N.W.2d at 151. Written findings are essential to enable meaningful appellate review. *In re Welfare of L.K.W.*, 372 N.W.2d 392, 401 (Minn.App.1985). The failure to make the statutorily required findings constitutes reversible error. *In re Welfare of L.B.*, 404 N.W.2d 341, 346 (Minn.App.1987). The trial court made no findings explaining why Chisholm House would serve appellant's best interests. In fact, neither the modification order nor the trial court's memorandum describe the type of treatment provided by Chisholm House or how that treatment would help solve appellant's problems. *See M.R.S.*, 400 N.W.2d at 151 (failure to make findings identifying juvenile's problems and suitability of disposition ordered as a remedy constitutes reversible error).

Although the trial court's findings were insufficient to support the new disposition, we do not remand for further findings but simply reverse as appellant has completed his stay at Chisholm House. Further dispositional findings would serve no purpose at this point in the proceeding. *See L.B.*, 404 N.W.2d at 346.

### DECISION

The trial court erred by failing to give the parties notice and a hearing before ordering the new disposition. The trial court erred by modifying, within a few days, its original disposition without any change in circumstances and without justification. The trial court erred by failing to make the findings mandated by statute. However, remand for further findings is unnecessary because appellant has completed his sentence.

Reversed.

LANSING, J., concurs specially.

LANSING, Judge (concurring specially).

I concur in the majority's holding that modification of the disposition required notice to the parties and a hearing. For that reason I agree with the result.