In the Matter of the WELFARE
OF J.S.S., Child.

No. CX–99–1590.

Court of Appeals of Minnesota.

May 16, 2000.

Mike Hatch, Attorney General, St. Paul, MN, and Paul Malone, Murray County Attorney, Eugene D. Mailander, Assistant County Attorney, Slayton, MN (for respondent).

John M. Stuart, State Public Defender, Charlann Winking, Assistant Public Defender, Minneapolis, MN (for child).

Considered and decided by KLAPHAKE, Presiding Judge, CRIPPEN, Judge, and SHUMAKER, Judge.

## OPINION

SHUMAKER, Judge.

Fourteen-year-old appellant J.S.S. was adjudicated delinquent on charges of criminal damage to property and disorderly conduct. The trial court ordered J.S.S. to complete an out-of-home, long-term residential treatment program at Sheriff's Youth Ranch in Austin, Minnesota. Because the court failed to make sufficient written findings of fact to support this placement under Minn.Stat. § 260.185, subd. 1 (1998), and Minn. R. Juv. P. 15.05, subd. 2(A), we reverse.

## FACTS

Appellant J.S.S. removed and damaged several plaques, worth approximately $70, from benches in Shetek State Park in Murray County, Minnesota. In another incident, J.S.S. also slapped a vulnerable adult on the back.

J.S.S. was charged by separate petitions in Murray County Juvenile Court with one count of criminal damage to property and one count of disorderly conduct, which had been amended from fifth-degree assault. The court adjudged J.S.S. delinquent on both charges and ordered his placement in a long-term residential treatment program at Sheriff's Youth Ranch in Austin, Minnesota.

At the dispositional hearing, the court stated:

> [T]he child has been before the Court on a number of occasions, including offenses of Theft in '96, offenses of Theft in '98, Truancy in '98, Disorderly Conduct in '98. The Court would note that the child was placed at short term placement at Lafayette House and Prairie Lakes Detention Center. * * * That the child has been before the Court in regard to violations of probation. That in view of the fact that the Court has placed the child out of the home before and the child has continued to re-offend upon return to his home, the Court feels it is now in the best interest of the child and society that he be placed out of home.

In its written findings of fact, the court noted J.S.S.'s previous offenses of theft, truancy, and disorderly conduct; J.S.S.'s prior appearances before the court for probation violations; the failure of prior short-term, out-of-home placements; his propensity to re-offend upon his return home; his poor school record; and the

need for additional out-of-home placement. The court also stated that "the best interests of the Child and society shall be served by an out-of-home placement at this time."

## ISSUE

Did the court make adequate findings to support its dispositional out-of-home placement for child?

## ANALYSIS

■ "Trial courts have broad discretion to order dispositions authorized by statute in delinquency cases." *In re Welfare of M.A.C.*, 455 N.W.2d 494, 498 (Minn. App.1990). The trial court's broad discretion in delinquency dispositions will be affirmed "so long as the trial court determination is not arbitrary." *In re Welfare of L.K.W.*, 372 N.W.2d 392, 397 (Minn.App. 1985).

■ A disposition must be "necessary to the rehabilitation of the child." Minn.Stat. § 260.185, subd. 1 (1998).[1]

Under the combined provisions of the juvenile code and Minn. R. Juv. P. 15.05, subd. 2(A), a juvenile court disposition that removes a child from [his] home must be supported by findings that address five subjects:

■ Why public safety is served by the disposition. Minn. R. Juv. P. 15.05, subd. 2(A)(1).

■ Why the best interests of the child are served by the disposition. *Id.*; Minn.Stat. § 260.185, subd. 1(i)(5)(a) (Supp.1997)

■ What alternative dispositions were proposed to the court and why such recommendations were not ordered. Minn. R. Juv. P. 15.05, subd. 2(A)(2);

---

1. Effective August 1, 1999, Minn.Stat. § 260.185 was recodified as Minn.Stat. § 260B.198. "The legislature intends this act to be a clarification and reorganization of laws relating to juvenile delinquency and child protection in Minnesota Statutes, chapters 257 and 260. The changes that have been made are not intended to alter those laws and shall not be construed by a court or other authority to alter them." Minn. Laws ch. 139, art. 4, § 1.

Minn.Stat. § 260.185, subd. 1(i)(5)(b) (Supp.1997).

■ Why the child's present custody is unacceptable. Minn. R. Juv. P. 15.05, subd. 2(A)(3)(a) ("the reasons why public safety and the best interest of the child are not served by preserving the child's present custody"); *see In re Welfare of L.K.W.*, 372 N.W.2d 392, 399–400 (Minn.App.1985) (reviewing preference under Minnesota law against removal of child from present custody).

■ How the correctional placement meets the child's needs. Minn. R. Juv. P. 15.05, subd. 2(A)(3)(b) ("suitability of the placement, taking into account the program of the placement facility and assessment of the child's actual needs").

In re Welfare of C.A.W. and L.R.M.B., 579 N.W.2d 494, 497–98 (Minn.App.1998).

## 1. Public Safety

■ In determining an out-of-home disposition for a child, the court must take into account the effect the disposition will have on public safety. Minn. R. Juv. P. 15.05, subd. 2(B)(1)(a). Here, the court considered J.S.S.'s prior offenses of truancy and disorderly conduct, and his tendency to re-offend after completing out-of-home placement, before ordering out-of-home placement. The trial court made sufficient findings as to why public safety would be served by the disposition.

## 2. Best Interests of the Child

■ The best interests of a child are usually served by parental custody. *In re Welfare of J.A.J.*, 545 N.W.2d 412, 426 (Minn.App.1996) (quotation and citation omitted). When out-of-home placement is considered, the placement should be suitable to the child's needs. Minn. R. Juv. P. 15.05, subd. 2(B)(3). A bare conclusion that the best interests of a child require a particular disposition is insufficient. *Id.* at 415. Here, the court stated that the "best interests of the Child * * * shall be served by an out-of-home placement at this time," and that the child "has continued to re-offend upon returning to his home [from previous out-of-home placement]." A finding of "best interests" with minimal elaboration is inadequate. *In re Welfare of M.R.S.*, 400 N.W.2d 147, 151 (Minn.App. 1987). The court did not explain how J.S.S.'s best interests would be served by an out-of-home placement, nor did it identify any interests of the child that would be served by placement at Sheriff's Youth Ranch in particular. Accordingly, the record is insufficient to support the finding that out-of-home placement was in J.S.S.'s best interests.

## 3. Alternative Dispositions

■ Each trial court disposition rests in part on a finding that [an out-of-home] placement will serve better than a "regular daytime community service program" in impressing upon the children the seriousness of their conduct, giving the child insight into the causes and nature of [his] behavior, and identifying needs for further intervention. *C.A.W.*, 579 N.W.2d at 498. At the dispositional hearing, J.S.S.'s counsel suggested that the trial court consider the options of local community service or probation. At both the hearing and in its written order, the trial court indicated that short-term, out-of-home placement had twice been attempted, but J.S.S. continued to re-offend upon his return home. The trial court did not expressly or directly respond to J.S.S.'s counsel's suggestion for local community service or probation. Rather, the court stated that because J.S.S. had continued to re-offend upon his return home, it was now appropriate to try a different disposition. This was a sufficient finding regarding alternative dispositions.

## 4. Present Custody

■ On its face, this aspect of the mandates for findings adds little to the rule that the trial court address dispositional alternatives. But the rule is a reminder of the preference for placing children in their own homes, and it calls

for attention to the families of the children. *C.A.W.*, 579 N.W.2d at 499. The trial court made no findings either at the dispositional hearing or in the written order that addressed J.S.S.'s familial relationships. "Correctional placements cannot occur without evidence and findings reflecting consideration of the child's familial relationships." *Id.* The record is insufficient to support J.S.S.'s out-of-home placement because the trial court made no finding that his current custodial arrangement was unacceptable.

### 5. Suitability of Placement

A dispositional order that places a child out of his home must contain written findings stating the reasons the placement facility will be suitable to the needs of the child. Minn. R. Juv. P. 15.05 subd. 2(A)(3)(b) (stating that suitability takes "into account the program of the placement facility and assessment of the child's actual needs"). Other than the finding that previous out-of-home placements had failed to deter J.S.S. from re-offending, the court made no findings either at the dispositional hearing or in the written order as to why Sheriff's Youth Ranch in Austin, Minnesota, was particularly suitable to J.S.S.'s rehabilitation needs. Accordingly, the record is insufficient to support J.S.S.'s out-of-home placement.

### D E C I S I O N

The trial court's findings are insufficient as to why J.S.S.'s best interests will be served by an out-of-home placement; why the particular placement at the Sheriff's Youth Ranch is appropriate and beneficial; and why J.S.S.'s current custodial arrangement is unacceptable. Therefore, the trial court's order for long-term residential placement is reversed.

**Reversed.**